ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **LUIS HIRAM QUIÑONES SANTIAGO**<br><br>Recurrente<br><br>v.<br><br>**JUNTA DE LIBERTAD BAJO PALABRA**<br><br>Recurrida | KLRA202500144 | **REVISIÓN** procedente de la **Junta de Libertad Bajo Palabra**<br><br>Caso Núm.: **143018**<br><br>Confinado Núm.: **4-32721** |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2025.

Comparece ante nos el señor Luis Hiram Quiñones Santiago (Sr. Quiñones Santiago o parte recurrente), por derecho propio e *in forma pauperis*, mediante un recurso de revisión judicial intitulado "Apelación" en el que solicita que revoquemos una *Resolución* emitida por la Junta de Libertad Bajo Palabra (JLBP) el 4 de febrero de 2025.[1] Por medio de dicho dictamen, la JLBP no le concedió al Sr. Quiñones Santiago el privilegio de libertad bajo palabra.

El 29 de abril de 2025, la JLBP, representada por la Oficina del Procurador General de Puerto Rico, radicó un *Escrito en Cumplimiento de Resolución.*

Por lo fundamentos que pormenorizamos a continuación, confirmamos la *Resolución* recurrida.

---

[1] Apéndice del recurso de revisión judicial, Anejo 1. Notificada y archivada en autos el 28 de febrero de 2025.

## I.

El foro estatal sentenció al Sr. Quiñones Santiago a cumplir noventa y nueve (99) años y noventa (90) días por los siguientes delitos:

> [A]sesinato en primer grado (Art. 83), asesinato en segundo grado (Art. 83), tentativa de asesinato (Art. 83), apropiación ilegal agravada (Art. 166), daño agravado (Art. 180) y conspiración (Art. 262) del Código Penal de 1974; y por resistencia u obstrucción a la autoridad pública (Art. 252) del Código Penal de 2004. Asimismo, por infracción al Art. 6 (posesión de armas sin licencia) y Art. 8 (portación sin licencia de armas cargadas o sus municiones a la vez) de la Ley de Armas de 1951; y violación al Art. 18 (apropiación ilegal de vehículo-medidas penales especiales) de la Ley Núm. 8 de 5 de agosto de 1987, según enmendada, conocida como la *Ley para la Protección de la Propiedad Vehicular.* Conforme al expediente, tentativamente, cumple su sentencia el 10 de julio de 2089.[2]

Posteriormente, el Tribunal federal activó un "detainer" o una orden de detención federal, luego de condenar al Sr. Quiñones Santiago a cumplir:

> **[C]iento treinta (130) meses, o diez (10) años, de cárcel** en cuanto al cargo número uno (1) y dos (2) **a ser cumplidas concurrentemente entre sí y concurrentemente con la sentencia estatal**. **Luego de esto, cumplirá cinco (5) años de supervisión en probatoria federal.** Los delitos federales por los cuales fue sentenciado el peticionario fueron por el RICO Act (Racketeer Influenced and Corrupt Organizations Act) y por conspiración para poseer con la intención, de distribución de sustancias controladas.[3]

(Énfasis suplido).

Para el 10 de agosto de 2019, la JLBP adquirió jurisdicción sobre el caso del Sr. Quiñones Santiago, y el 17 de enero de 2024 determinó no concederle el privilegio de libertad bajo palabra, con fecha de reconsideración para el mes de diciembre de 2024.[4] Conforme a ello, la JLBP procedió a revisar el expediente incluyendo informes, evaluaciones y expedientes que fueron referidos por el Departamento de Corrección y Rehabilitación (DCR).

---

[2] *Íd.*
[3] *Íd.*
[4] *Íd.*

En su consecuencia, la JLBP emitió la *Resolución* recurrida el 4 de febrero de 2025. Por medio de esta, dictaminó que estaba impedida de concederle el privilegio de libertad bajo palabra al Sr. Quiñones Santiago, pero que volverá a ser considerado en febrero del año 2026. Fundamentó su decisión en que el Sr. Quiñones Santiago no contaba con una evaluación psicológica vigente de la Sección de Programas de Evaluación y Asesoramiento (SPEA), conforme al Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9603 del 25 de septiembre de 2024 (Reglamento Núm. 9603-2024). De igual modo, sostuvo que, aunque el Sr. Quiñones Santiago contaba con una oferta de empleo, esta no pudo ser corroborada por el DCR. Por último, resolvió que al Sr. Quiñones Santiago todavía le restaba por cumplir parte de la sentencia federal.

Inconforme, el Sr. Quiñones Santiago radicó ante nos un recurso de revisión judicial intitulado "Apelación" el 11 de marzo de 2025. Planteó que la JLBP erró al no concederle el privilegio cuando él había radicado una solicitud de remedio administrativo y contaba con una carta de empleo. También señaló que la JLBP incidió al utilizar el "detainer" o la orden de detención federal para no otorgarle el privilegio de libertad bajo palabra.

Por su parte, la JLBP presentó un *Escrito en Cumplimiento de Resolución* el 29 de abril de 2025. En síntesis, adujo que la JLBP basó su decisión en el análisis de la totalidad del expediente, y que el Sr. Quiñones Santiago no logró rebatir la presunción de corrección y legalidad que cobijaba la decisión recurrida. Por consiguiente, sostuvo que la *Resolución* recurrida merecía entera deferencia.

**II.**

**A.**

Es harto conocido que los tribunales revisores deben concederles deferencia a las decisiones de las agencias

administrativas, pues estas entidades son las que cuentan con experiencia y conocimiento especializado sobre asuntos ante su consideración. *Capó Cruz v. Junta de Planificación,* 204 DPR 581, 591 (2020); *Torres Rivera v. Pol. de PR*, 196 DPR 606, 626 (2016). Como resultado, los dictámenes emitidos por estas gozan de una presunción de legalidad y corrección, mientras no se demuestre que dicha presunción de legalidad fue superada o invalidada con evidencia suficiente. *Capó Cruz v. Junta de Planificación, supra*, pág. 591; *Torres Rivera v. Pol. de PR, supra*, pág. 626; *Batista, Nobbe v. JTA. Directores*, 185 DPR 206, 215 (2012).

En cuanto a las determinaciones de hecho, estas deben sostenerse si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo. *Capó Cruz v. Junta de Planificación, supra*, pág. 591; *Rolón Martínez v. Caldero López*, 201 DPR 26, 35-36 (2018). Se ha definido la prueba sustancial como "aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Caldero López, supra*, pág. 36; *Capó Cruz v. Junta de Planificación, supra*, pág. 591. Este criterio busca "'evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor'". *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79, 90 (2022) (ci*tando a Torres Rivera v. Pol. de PR, supra*, pág. 627).

Por otro lado, las determinaciones de derecho pueden ser revisables en todos sus aspectos por los tribunales. *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675; *Capó Cruz v. Junta de Planificación, supra*, pág. 591; *Torres Rivera v. Pol. de PR, supra,* pág. 627.

Nuevamente la revisión judicial no debe ser utilizada para sustituir el criterio o la interpretación de la agencia administrativa

de forma automática. *Capó Cruz v. Junta de Planificación, supra,* pág. 591; *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). Sin embargo, los tribunales pueden descartar ese criterio cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Caldero López, supra,* pág. 36. Cuando un tribunal llega a un resultado diferente al de la agencia administrativa, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Otero v. Toyota,* 163 DPR 716, 729 (2005). En otras palabras, el criterio para seguir al momento de pasar juicio sobre la determinación del foro administrativo es la razonabilidad de la actuación de la agencia. *Oficina de Ética Gubernamental v. Martínez Giraud, supra,* pág. 89; *Torres Rivera v. Pol. de Puerto Rico, supra,* pág. 626.

En fin, la deferencia concedida a las agencias administrativas únicamente cede cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Torres Rivera v. Pol. de Puerto Rico, supra,* págs. 627-628.

**B.**

Por otro lado, "[s]erá política pública del Estado Libre Asociado. . . reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19,

Const. ELA, LPRA, Tomo 1, pág. 462. Cónsono con lo anterior, la *Ley de la Junta de Libertad Bajo Palabra*, Ley Núm. 118 del 22 de julio de 1974, según enmendada, 4 LPRA secs. 1501 *et seq.*, creó la JLBP. Entre los poderes y deberes que tiene ese cuerpo se encuentra la autoridad de concederles a las personas recluidas, en cualquiera de las instituciones penales de Puerto Rico, el privilegio de cumplir la última parte de su condena en libertad bajo palabra. Artículo 3 de la Ley Núm. 22-1974, *supra*, sec. 1503; *Benítez Nieves v. Estado Libre Asociado*, 202 DPR 818, 825 (2019). Es meritorio mencionar que este beneficio no es un derecho reclamable, sino un privilegio cuya concesión y administración recae en el Tribunal o en la JLBP. *Pueblo v. Negrón Caldero*, 157 DPR 413, 420 (2002). Asimismo, al concederles el privilegio, la JLBP puede imponerles las condiciones que estime necesarias. Artículo 3 de la Ley Núm. 22-1974, *supra*, sec. 1503; *Benítez Nieves v. Estado Libre Asociado*, *supra*, pág. 825. Estos criterios son:

> **(1)** La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
> **(2)** Las veces que el confinado haya sido convicto y sentenciado.
> **(3)** Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
> **(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.**
> **(5)** El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.
> **(6)** La edad del confinado.
> **(7)** El o los tratamientos para condiciones de salud que reciba el confinado.
> **(8)** La opinión de la víctima.
> **(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.**
> **(10)** Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.
> **(11) <u>Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.</u>**
>
> **La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.**

Artículo 3-D de la Ley Núm. 22-1974, *supra,* sec. 1503d. (Énfasis suplido).

La Asamblea Legislativa también estableció que la JLBP promulgará aquellas reglas y reglamentos que crea convenientes para el mejor cumplimiento con el Artículo 5 de la Ley Núm. 22-1974, *supra,* sec. 1505. Conforme a lo anterior, la JLBP aprobó el Reglamento Núm. 9603-2024, *supra,* en el que sostuvo que evaluará las peticiones de privilegio, caso a caso, y conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado recluso, y los criterios dispuestos en dicho reglamento. Sección 10.1(A) y (B) del Reglamento Núm. 9603-2024, *supra,* págs. 36-48. Entre los factores que tomará en consideración se encuentran el "detainer" u orden de detención federal, y la oferta de empleo y/o estudio:

**Sección 10.1 – Criterios para elegibilidad**

. . . .

**B. Al evaluar los casos, la Junta tomará en consideración los siguientes criterios con relación al peticionario:**

**1. Historial delictivo**

. . . .

**e. Si existe una orden de detención ("detainer") emitida por cualquier estado de los Estados Unidos, el tribunal federal, el gobierno federal y/o del Servicio de Inmigración y Naturalización.**

. . . .

**8. Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.**

**d. Oferta de empleo y/o estudio.**

i. Todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan de estudios o adiestramiento vocacional, o estudio y trabajo.

ii. La oferta de empleo se presentará mediante carta suscrita por la persona que extiende la

oferta de empleo al peticionario, incluyendo la siguiente información:

(a) Nombre completo, dirección postal, física, electrónica y teléfono(s) de la persona que ofrece el empleo.

(b) Nombre, dirección postal, física, electrónica y teléfono(s) y naturaleza del negocio en el cual se ofrece el empleo.

(c) Funciones que ejercerá el peticionario y el horario de trabajo.

iii. Los planes de estudio, incluyendo el adiestramiento vocacional y/o el programa de estudio y trabajo, se presentarán sometiendo la carta de aceptación de la institución educativa, con expresión del programa o facultad al cual ingresará. El empleo deberá incluir descripción de funciones.

iv. Se eximen de presentar una oferta de empleo o estudios en aquellos casos en que el peticionario padezca de alguna incapacidad física, mental o emocional, debidamente diagnosticada y certificada por la autoridad competente, o el peticionario sea mayor de sesenta (60) años.

. . . .

Sección 10.1(B)(1)(e) y (B)(8)(d) del Reglamento Núm. 9603-2024, *supra*, págs. 36-38, 40-41. (Énfasis suplido).

De igual modo, la JLBP tomará en cuenta varios documentos incluyendo la evaluación de la SPEA y el informe de libertad bajo palabra:

**Sección 10.2 – Documentos**

A. El Departamento de Corrección y Rehabilitación, a través de sus funcionarios, empleados y/o representantes autorizados, proveerá a la Junta todo documento que contenga información relacionada a los criterios antes esbozados. La producción de estos documentos se hará para la fecha de la vista de consideración o la fecha en que se vuelva a reconsiderar el caso. **En cumplimiento con lo anterior, el Departamento de Corrección y Rehabilitación, remitirá a la Junta los siguientes documentos:**

. . . .

**3. Informe de libertad bajo palabra debidamente cumplimentado.**

a. El Programa de Comunidad correspondiente remitirá este informe a la Junta, incluyendo la siguiente información:

**i. <u>Corroboración</u> de plan de salida propuesto y la opinión de la comunidad donde residirá el peticionario de concedérsele el privilegio.**

. . . .

**12. Evaluación médica, psicológica y/o psiquiátrica**

**a. La Junta podrá requerir la evaluación médica, psicológica o psiquiátrica de la Sección Programa de Evaluación y Asesoramiento (SPEA) o entidad análoga debidamente acreditada por el Estado, en aquellos casos en que la persona se encuentre cumpliendo sentencia por delitos contra la vida y/o delitos contra la indemnidad sexual, conforme al estado de derecho vigente a la fecha en que fue sentenciado, o en cualquier otro caso en que la Junta lo considere necesario.**

**b. Estos informes tendrán una vigencia de tres (3) años desde la fecha de la evaluación.**

c. La Junta en su discreción podrá requerir otra evaluación, aunque tenga una vigente.

d. Todo miembro de la población correccional o liberado podrá presentar certificado de tratamiento o evaluación psicológica o psiquiátrica privada a su propio costo a la Junta de Libertad Bajo Palabra para posible aprobación.

Sección 10.2(A)(3)(a)(i) y (A)(12) del Reglamento Núm. 9603-2024, *supra*, págs. 48-49, 51. (Énfasis suplido).

## C.

Ahora bien, el "detainer" es una "[s]olicitud presentada por una Agencia de Justicia Penal ante la Institución Correccional en la cual se encuentra el encarcelado el peticionario [sic] y se pide que se notifique a la Agencia que emitió el 'Detainer' cuando el peticionario vaya a ser liberado". Artículo V (o) del Reglamento Núm.

9603-2024, *supra,* pág. 8. Un "detainer" federal es un "[a]uto de detención federal emitido por las autoridades federales pertinentes para que se cumpla una sentencia pendiente". Artículo V (r) del Reglamento Núm. 9603-2024, *supra.*

En esa misma línea, nuestro máximo foro ha resuelto que cuando se impone una sentencia de reclusión a un acusado sujeto a otra sentencia- impuesta por un estado o tribunal federal- le corresponde al juez o a la jueza sentenciador(a) determinar de forma discrecional si la sentencia actual será cumplida concurrente o consecutivamente con la sentencia emitida previamente, y si el juez o la jueza sentenciador(a) deja de manifestar cómo se cumplirá la sentencia, se entiende que esta será cumplida concurrentemente. *Pueblo v. Casanova Cruz,* 117 DPR 784, 788 (1986). Sobre este particular, nuestro máximo foro expuso que:

> **Las sentencias se cumplen en forma concurrente cuando se cumplen simultáneamente; esto es, cuando el convicto las extingue al mismo tiempo.** Las sentencias se cumplen en forma consecutiva cuando una sentencia no empieza a cumplirse hasta cumplida la otra; esto es, el convicto sólo empieza a cumplir una sentencia tras extinguir la anterior. **Por supuesto, el acusado-convicto que es sentenciado por dos o más delitos quisiera cumplir las sentencias concurrentemente.** La determinación judicial de sentencias consecutivas o concurrentes no sólo se produce en casos de acumulación de delitos contra un acusado; también se produce cuando el convicto *está extinguiendo o va a cumplir una sentencia anterior.*
>
> *Pueblo v. Torres Rodríguez,* 186 DPR 183, 193 (2012) (Énfasis suplido) (*citando a* E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1995, Vol. II, Tomo III, pág. 413).

### III.

Por estar íntimamente relacionados, discutiremos los señalamientos de error en conjunto. Así, nos corresponde determinar si procedía que la JLBP le concediera al Sr. Quiñones Santiago el privilegio de libertad bajo palabra.

A juicio de la JLBP, no procedía otorgarle al Sr. Quiñones Santiago dicho privilegio. Fundamentó su dictamen en que este no

contaba con una evaluación psicológica vigente de la SPEA; el DCR no pudo corroborar la oferta de empleo del Sr. Quiñones Santiago; y este le restaba por cumplir todavía parte de la sentencia federal. Además, indicó que volvería a ser considerado para febrero del año 2026.

Insatisfecho, el Sr. Quiñones Santiago sostuvo que la JLBP erró al no concederle el privilegio cuando él había radicado una solicitud de remedio administrativo y contaba con una carta de empleo. Adujo también que la JLBP incidió al utilizar el "detainer" como obstáculo para denegarle el privilegio de libertad bajo palabra.

Por su parte, por medio del Procurador General, la JLBP indicó ante nos que, para alcanzar la decisión recurrida, analizó la totalidad del expediente, y que, en cambio, el Sr. Quiñones Santiago no logró rebatir la presunción de corrección y legalidad que cobijaba la decisión recurrida. Por consiguiente, sostuvo que la *Resolución* recurrida merecía entera deferencia.

Tras un análisis objetivo y cuidadoso, resolvemos que la JLBP no incidió al denegarle al Sr. Quiñones Santiago el privilegio de libertad bajo palabra. En el ejercicio de su discreción, la JLBP identificó tres (3) criterios particulares que descalificaron al Sr. Quiñones Santiago de obtener el privilegio de libertad bajo palabra; a saber, la carta de empleo, la evaluación psicológica de la SPEA, y el "detainer" federal. Artículo 3-D de la Ley Núm. 22-1974, *supra*, sec. 1503d; Reglamento Núm. 9603-2024, *supra*. En particular, contrario a lo sugerido por el Sr. Quiñones Santiago, la JLBP podía tomar en cuenta el "detainer" federal para resolver si se podía beneficiar del privilegio de libertad bajo palabra. Sección 10.1(B)(1)(e) del Reglamento Núm. 9603-2024, *supra*, págs. 36-37. En el caso de marras, el foro federal sentenció al Sr. Quiñones Santiago a una pena de cárcel de ciento treinta (130) meses- **diez (10) años**- a ser cumplida concurrentemente con la sentencia

estatal y luego, cinco (5) años de supervisión. Además, determinó que se le podía abonar a la sentencia estatal el tiempo cumplido bajo la custodia federal; a saber, desde el 11 de mayo de 2016 hasta el 13 de febrero de 2020. Sin embargo, para el 4 de febrero de 2025, fecha en la que la JLBP emitió la *Resolución* recurrida, el Sr. Quiñones Santiago solamente había cumplido aproximadamente **ocho (8) años, y ocho (8) meses** de la sentencia federal. Por lo tanto, todavía le restaba tiempo por cumplir de la pena impuesta por el Tribunal federal, y, por ende, el Sr. Quiñones Santiago no podía gozar del privilegio de libertad bajo palabra.

Ciertamente, la JLBP no abusó de su discreción. Nótese, además, que el Sr. Quiñones Santiago tampoco demostró que la JLBP hubiese errado en su interpretación del derecho ni que hubiese actuado irrazonablemente al tomar la decisión recurrida.

A base de las circunstancias expuestas por la JLBP junto a la doctrina de deferencia, procede la confirmación de la *Resolución* recurrida.

**IV.**

Por las razones discutidas anteriormente, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones